**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DENNIS WOLFEL,** *et al.,*

        **Plaintiffs,**

      **v.**                    **Case No. 2:07-CV-1296**
                                          **JUDGE WATSON**
                                          **Magistrate Judge King**

**TERRY COLLINS,** *et al.,*

        **Defendants.**

## REPORT AND RECOMMENDATION

This matter is before the Court for renewed consideration of the Defendants' *Motion for Summary Judgment,* Doc. No. 37, following a hearing on the issue of exhaustion of administrative remedies.  For the reasons that follow, it is RECOMMENDED that Defendants' motion be denied in part and granted in part.

### I.

Plaintiff, Dennis Wolfel["Plaintiff"], brings this action pursuant to 42 U.S.C. §§ 1981 and 1983, claiming that he was denied placement in two different housing units at the London Correctional Institution ["LoCI"] on account of a policy of the Ohio Department of Rehabilitation and Correction ["ODRC"] intended to achieve racial balance among inmates.[1]

In Count I of the *Complaint*, Doc. No. 4, Plaintiff states that, upon his arrival at LoCI in

---

[1]Plaintiff Anthony Soto also challenged the policy in connection with a job assignment, but his claim was dismissed for failure to prosecute. *See Opinion and Order*, Doc. No. 57, at 4.

February 2004, he requested placement on the waiting list for dormitory housing in the Older

Offender's Program ["Spruce C/D"].  *Complaint* at ¶ 12.   After noticing that "black inmates

were being placed in the Older Offenders Program upon their arrival at [LoCI] ahead of white

inmates on the placement waiting list," *Id.* at ¶ 13, and learning that there was "a white waiting

list and a black waiting list . . . for the sake of racial balance in all prison programs and housing

assignments," *Id*. at ¶ 14,  Plaintiff filed a grievance "complaining of racial discrimination and

challenging the prison's racial balance policy as unconstitutional."  *Id.* at ¶ 15.  According to

Plaintiff, the Institutional Inspector at LoCI dismissed the complaint, responding that "racial

balance of all living areas and programs at [LoCI] was the official policy of the [ODRC] and that

was the reason blacks were put ahead of plaintiff . . . ."  *Id.* at ¶ 18.  Plaintiff appealed this

decision to the Chief Inspector, who allegedly "condoned and ratified" the "official policy of

racial balance for the sake of racial balance."  *Id.* at ¶ 19.[2]

    In Count II of the *Complaint*, Plaintiff states that, in September 2007, he "sent a written

request to . . . the Unit Manager of Oak Unit . . . to be placed on the waiting list for placement in

a cell in Oak E."  *Id.* at ¶ 21.  Plaintiff alleges that he was again placed on a waiting list.  The

*Complaint* claims that "[t]he racial policy upon which [Defendants] rel[y] to prefer or reject

Plaintiff Wolfel for assignment to a cell in Oak E cell block . . . is patently unconstitutional on its

face and as applied. . . ."  *Id.* at ¶¶ 21-22.[3]

---

[2]The *Answer*, Doc. No. 9, does not include a defense based on the statute of limitations.

[3]The policy to which Plaintiff apparently refers provides, in pertinent part:

It is the policy of the Ohio Department of Rehabilitation and Correction to create an atmosphere of
racial equality in the correctional institutions by minimizing even the appearance of segregation.
The fostering and creation of integrated housing and job assignments should be accomplished to
enhance rehabilitation efforts and serve the security interests of the institution.  Inmates shall be
assigned without regard to the inmate's race, ethnicity or national origin.

Plaintiff  filed a *Motion for Partial Summary Judgment* on the merits of his claims.  Doc. No. 23.  In response,  Defendants filed a *Motion for Summary Judgment*,  Doc. No. 37, taking the position that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ["PLRA"], 42 U.S.C. § 1997e(a).   The Court has deferred consideration of  the merits of Plaintiff's *Motion for Partial Summary Judgment* pending resolution of the issue of exhaustion of administrative remedies.  *Opinion and Order*, Doc. No. 57.

In support of their position that Plaintiff Wolfel has not exhausted his available administrative remedies, Defendants submitted the affidavit of Linda Coval, Chief Inspector of ODRC and custodian of records for inmate appeals and grievances.  *Affidavit of Linda Coval* at ¶ 2, attached to *Defendants' Motion for Summary Judgment*.  In her affidavit, Ms. Coval avers:

> I have reviewed the records for 2007 . . . with regard to [Plaintiff].  According to those records, [Plaintiff] has not exhausted his administrative remedies with respect to his claims regarding 1) the denial of eligibility for housing in the Older Offenders' Program or Preferred Housing at London Correctional Institution or 2) racial discrimination in prison housing and programs or 3) ODRC's "racial balance policy."

*Id.* at ¶ 8.  In response, Plaintiff argues that he did, in fact, exhaust his administrative remedies, as demonstrated by the allegations in his *Complaint*, which is verified.  Doc. No. 4.

## II.

The PLRA requires that a prisoner filing a claim under federal law relating to prison conditions must first exhaust available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  The statute provides, in pertinent part:

No action shall be brought with respect to prison conditions under [section 1983

---

*Exhibit A* attached to *Defendants' Memorandum contra Plaintiffs' Motion for Preliminary Injunction*, Doc. No. 34.

of this title], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

In order to satisfy this exhaustion requirement, an inmate plaintiff must "complete the administrative review process in accordance with the applicable procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "Failure to exhaust is an affirmative defense under the PLRA, and [ ] inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Exhaustion is not a jurisdictional predicate but the requirement is nevertheless mandatory, *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999), even if proceeding through the administrative procedure would appear to the inmate to be "futile." *Hartsfield v. Vidor*, 199 F.3d 305, 308-10 (6th Cir. 1999).

Ohio has established a procedure for resolving inmate complaints.  Ohio Admin. Code § 5120-9-31.  The procedure is available to an inmate "regardless of any disciplinary status, or other administrative or legislative decision to which the inmate may be subject," §5120-9-31(D), and is intended to "address inmate complaints related to any aspect of institutional life that directly and personally affects the grievant," including "complaints regarding policies, procedures, conditions of confinement. . . ." § 5120-9-31(A).  Certain matters are not grievable, however,  including "complaints unrelated to institutional life, such as legislative actions, policies and decisions of the adult parole authority, judicial proceedings and sentencing or complaints whose subject matter is exclusively within the jurisdiction of the courts or other agencies." § 5120-9-31(B).

Ohio employs a three-step grievance procedure.  First, an inmate must file an informal

4

complaint within fourteen days of the event giving rise to the complaint. § 5120-9-31(J)(1). The informal complaint must be filed "to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." *Id.* If the informal complaint is resolved in a manner that is unsatisfactory to the inmate, he must file a notification of grievance with the inspector of institutional services within fourteen days. § 5120-9-31(J)(2). If the inmate is dissatisfied with the disposition of the grievance, he must then appeal to the office of the chief inspector within fourteen days. § 5120-9-31(J)(3). "The decision of the chief inspector or designee is final." *Id.* Remedies for valid grievances include "changes to institutional policies or procedures, the implementation of new policies or procedures, and/or corrective action specific to the inmate's complaint." § 5120-9-31(K).

## III.

The parties appear to agree that Plaintiff exhausted available administrative remedies in connection with his placement on a waiting list for the Spruce C/D dorm in April 2004. The parties also agree that Plaintiff did not pursue a grievance in connection with his placement on a waiting list in September 2007 for a cell in the preferred housing of Oak Unit E. It is clear that the decision to place Plaintiff on a waiting list in September 2007 for placement in a cell in Oak Unit E was a separate and distinct event from Plaintiff's placement on a waiting list in April 2004 for dormitory housing in Spruce C/D as part of the Older Offenders' Program. Plaintiff contends that he has nevertheless satisfied the PLRA exhaustion requirement with respect to the events of 2007 because (A) the issue is not grievable; (B) his 2004 grievance also applied to the events of 2007; or (c) pursuit of a grievance in 2007 would have been futile.

5

A.  Was the Issue Grievable?

Plaintiff first contends that his complaint regarding the alleged racial balance policy in prison housing assignments is not an appropriate subject for the prison grievance procedure.  He bases this argument on the fact that, in response to former Plaintiff Soto's grievance involving Soto's work assignment, the Chief Inspector allegedly advised Soto "that the policy of racial balance for the sake of racial balance . . . is not a matter that can be grieved using the inmate grievance procedure 'and advised using the legal system to address said issue.'" *Complaint*, ¶ 31. Initially, the Court notes that Plaintiff Wolfel has not proffered the actual resolution of Soto's appeal into evidence; the language referred to by Plaintiff Wolfel appears to be his (or former Plaintiff Soto's) paraphrase of language utilized by the Chief Inspector.  Moreover, the express language of Ohio's inmate grievance procedure would appear to render this issue a proper subject of an inmate grievance.  *See* § 5120-9-31(A)(grievances may include  "complaints regarding policies, procedures, conditions of confinement. . .").  Furthermore, Plaintiff Wolfel's 2004 grievance relating to dormitory housing in the Older Offenders Program was not dismissed as non-grievable but was instead resolved on the merits – albeit not to Plaintiff's satisfaction. Under these circumstances, the Court rejects Plaintiff's contention that he had no obligation to exhaust the inmate grievance procedure in connection with the events of 2007 because the issue was not grievable.

B.  Was the 2004 Grievance Applicable to the Events of 2007?

Plaintiff argues that his 2004 grievance should also serve to satisfy his exhaustion obligation in connection with the events of 2007 because the determinative issue in both instances was the same, *i.e.,* is the racial balance policy permissible?  In the Court's view,

Plaintiff's characterization of the issues presented by his claims is unduly restrictive.

Plaintiff's requests for housing in Spruce C/D and Oak Unit E were separated by more than three years.  The housing assignments sought by Plaintiff related to two different programs, presumably overseen by different managers.  The factual contexts of Plaintiff's requests could very likely have differed in terms of Plaintiff's own institutional record and eligibility and in terms of the overall demographics of the institution.  It is simply unreasonable to reduce Plaintiff's complaints regarding his requests for housing to a static and unnuanced application of a prison policy.  Rather, Plaintiff's complaints regarding his requests for preferred housing assignments presented precisely the sort of complaints properly addressed in a prison grievance procedure.  "[T]he benefits of exhaustion . . . include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."  *Jones v. Bock*, 549 U.S. at 218.  This Court therefore rejects Plaintiff's contention that his 2004 grievance satisfied his exhaustion requirement as it relates to the events of 2007.

      C. <u>Was the Exhaustion Requirement Excused on the Basis of Futility?</u>

Finally, Plaintiff argues that no administrative remedies were available to him with respect to the events of 2007 because, in light of the resolution of his 2004 grievance and of Soto's grievance, yet another grievance in 2007 would have been futile.  The PLRA's exhaustion requirement allows few exceptions. *Booth v. Churner,* 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise").  *See also Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 235-36 (6th

7

Cir. 2006) (exceptions to habeas corpus exhaustion requirement do not apply to PLRA exhaustion requirement). The United States Court of Appeals for the Sixth Circuit has commented that the PLRA exhaustion requirement may be excused on the basis of futility where, for example, "the prison system has a flat rule declining jurisdiction over such cases . . . ." *Hartsfield,* 199 F.3d at 308. However, a subjective belief on the part of an inmate as to what the outcome of his grievance might be will not serve to relieve him of his obligation to exhaust available administrative remedies. *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 998 (6th Cir. 2004). The PLRA exhaustion requirement is not excused merely because a similar inmate complaint has been denied in the past. *See, e.g., Bowling v. Haas*, 2007 WL 403875, *2 (E.D. Ky. January 31, 2007). In any event, as noted *supra*, the factual contexts surrounding Plaintiff's 2004 and 2007 housing requests were quite different; to assume that the resolution of a grievance filed in connection with the 2007 request would inevitably have been the same as the resolution of the 2004 grievance would be to engage in rank speculation.

In sum, the Court concludes that Plaintiff was required to, but did not, exhaust his administrative remedies in connection with the events of 2007. To that extent, then, Defendants' *Motion for Summary Judgment* is meritorious.

## IV.

It is therefore **RECOMMENDED** that Defendants' *Motion for Summary Judgment*, **Doc. No. 37**, as it pertains to Plaintiff Wolfel's claims, be **DENIED in part and GRANTED in part.** As the motion relates to exhaustion of administrative remedies in connection with the events of 2004, it is **RECOMMENDED** that the motion be **DENIED**; as the motion relates to

8

exhaustion of administrative remedies in connection with the events of 2007, it is

**RECOMMENDED** that the motion be **GRANTED.**

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231, etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**October 7, 2010**                              *s/ Norah McCann King*
**DATE**                                         **NORAH McCANN KING**
                                                 **UNITED STATES MAGISTRATE JUDGE**